UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

EVERETT STURGILL,

           Plaintiff,

v.                               CAUSE NO. 1:19-CV-436 DRL

ANDREW SAUL,
Commissioner of Social Security,

           Defendant.

## OPINION AND ORDER

Plaintiff Everett Sturgill seeks judicial review of the Social Security Administration's decision denying his application for disability and disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. § 423(a). Mr. Sturgill requests reversal of the administrative law judge's decision or alternatively remand of his claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court affirms the ALJ's decision.

## BACKGROUND

On January 21, 2017, Mr. Sturgill filed an application for Social Security disability insurance benefits, alleging a disability onset date of October 17, 2016 (R. 15). These claims were initially denied on March 16, 2017 and upon reconsideration on June 12, 2017 (*id.*). On May 7, 2018, a hearing was held before Administrative Law Judge Genevieve Adamo. *Id* at 14-15. On September 18, 2018, the ALJ entered a decision denying Mr. Sturgill benefits (R. 25). Mr. Sturgill challenged the ALJ's decision by timely filing a request for review of hearing decision with the Appeals Council (R. 1). The Appeals Council denied review on August 13, 2019 (*id.*). Accordingly, the ALJ decision is the final decision of the agency. *See* 20 C.F.R. § 404.981.

Mr. Sturgill timely filed his complaint here. Mr. Sturgill also filed an opening brief. The Commissioner timely filed a response, and Mr. Sturgill did not reply. The issues are fully ripe for decision.

## STANDARD

The court has authority to review the ALJ's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is such evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and her conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education and

work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See id.*

Here, the ALJ found that Mr. Sturgill satisfied step one by not being currently employed in substantial gainful activity (R. 17). The ALJ then found that Mr. Sturgill satisfied step two because his post C5-C7 anterior and post exterior cervical spine fusion was a severe impairment (R. 18). Next, the ALJ found that Mr. Sturgill's impairments did not meet or exceed any of the specific impairments listed that are so severe as to be conclusively disabling (*id.*). The ALJ then proceeded to formulate the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs and stooping; frequently balancing, kneeling, crouching, and crawling; must avoid unprotected heights and dangerous moving machinery with unprotected moving mechanical parts; frequent handling, fingering, reaching and feeling with the dominant upper extremity; and frequent neck rotation.

(R. 19). At step four, the ALJ determined, based on her RFC findings, that Mr. Sturgill was unable to continue performance of his past relevant work as a tire repairer (DOT 915.684-010) and boat hoist operator (DOT 921-667-010) (R. 24). At step five, however, the ALJ found that considering Mr. Sturgill's age, education, work experience, and RFC, there are jobs that exist in the national economy that he can perform (*id.*). This finding was based on a vocational expert's testimony that Mr. Sturgill could perform the requirements of housekeeping cleaner (DOT 323.687-014), merchandise marker (DOT 209.587-034), and routing clerk (DOT 222.587-038). Because of her determination at step five, the ALJ denied Mr. Sturgill benefits.

Mr. Sturgill claims that the ALJ made three errors in determining the RFC: (1) that the ALJ ignored entire lines of contrary evidence and selectively considered medical reports, (2) that the ALJ failed to apply the proper standard in reviewing his symptom allegations, and (3) that the ALJ failed to support her RFC determination with substantial evidence.

An ALJ should consider all the evidence in the record to determine whether a claimant is disabled. *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002); 20 C.F.R. § 416.929(c)(2). While an ALJ must "confront the evidence that does not support her conclusion and explain why that evidence was rejected," an ALJ needn't discuss every piece of evidence in the record. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *see also Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.").

To begin, it is difficult to follow Mr. Sturgill's sometimes vague and undeveloped contentions. *See generally Schomas v. Colvin,* 732 F.3d 702, 708 (7th Cir. 2013) (undeveloped arguments are waived). He first argues that the ALJ didn't consider contrary evidence in the record and that she selectively considered medical reports. The ALJ found that Mr. Sturgill had a severe impairment in his cervical spine (R. 18), but his RFC allowed him to work in jobs available in the national economy (R. 24). The ALJ noted that Mr. Sturgill's x-ray in December 2016 revealed that his spine was in normal alignment, his intervertebral discs were unremarkable, and soft tissues normal (R. 22 citing R. 236). She further stated that Mr. Sturgill's imaging of his cervical spine in January 2017 showed satisfactory appearance and the MRI in September 2017 showed stability and nothing remarkable (R. 23 citing R. 323). Mr. Sturgill claims that "the most expert doctor on record," presumably referring to Dr. William Young, though he never says, examined other evidence of dynamic imaging and Somatosensory Evoked Potentials that indicated Mr. Sturgill still experienced problems. Mr. Sturgill says the ALJ should have considered this information.

The sections of the record Mr. Sturgill cites were all analyzed by the ALJ, and nothing suggests they are contradictory to the ALJ's decision. Nor does Mr. Sturgill explain how the evidence is inconsistent with the RFC. For instance, Mr. Sturgill cites to exhibit 2F, reports by Dr. William Young,

4

where he says "there was splaying of the spinous processes particularly at C6-7 on flexion/extension views which is indicative of a pseudoarthrosis" (R. 246). That report was completed on September 15, 2016 and was cited by the ALJ in discussing the results of Dr. Young's examination. Despite Mr. Sturgill's contention otherwise, the ALJ doesn't dispute that Mr. Sturgill was experiencing pain in his neck/shoulders, and she listed multiple sources of medical evidence indicating as much. *See* R. 22 (citing evidence that even in September 2017 Mr. Sturgill was reporting neck pain). In fact, the ALJ concluded that he had a severe impairment, (R. 18). She didn't ignore any lines of evidence, let alone contradictory evidence about Mr. Sturgill's neck problems.

Mr. Sturgill then asserts that the ALJ "extract[ed] some things from some physical therapy appointments, but . . . [did] not wrestle with contrary [evidence] to the non-disability ruling[.]" ECF 15 at 9. The court rejects Mr. Sturgill's characterization of the ALJ's opinion as extracting only the good things from his physical therapy appointments. The ALJ considered the minimal progress Mr. Sturgill was making in physical therapy: he "reported minimal change in symptoms since starting physical therapy, and that work activities caused him the greatest discomfort, despite reported compliance with his home exercise program" (R. 21). The ALJ discussed an evaluation conducted by Mr. Sturgill's physical therapist: "Mr. Misner noted the claimant demonstrated minimal progress with physical therapy intervention, minimal changes in his abnormal cervical range of motion, mild improvements in cervical musculature/soft tissue mobility/flexibility with deficits still present, and that the claimant's symptoms were the most pronounced in the right upper cervical spine with intermittent headache symptoms" (R. 21). Furthermore, the ALJ cited the two exhibits containing evidence that Mr. Sturgill wasn't meeting his physical therapy goals. It's hard to see how Mr. Sturgill now claims the ALJ ignored this entire line of purportedly contrary evidence.

Next, Mr. Sturgill claims the ALJ didn't consider Dr. Young's non-time-limited restrictions on Mr. Sturgill, including that he should limit his walking, that he should get out and walk after riding in

5

a car for more than an hour, and that he should keep his neck in a neutral position. He also says the ALJ didn't acknowledge that Dr. Young never released Dr. Sturgill to work.

These restrictions were placed on Mr. Sturgill in October 2016 as part of his post-operative instructions (R. 264). They were generic; for example, "[i]f your incision is covered with steri-strips, remove them at home 7-10 days after surgery" (R.265). Mr. Sturgill doesn't explain how this is contrary to the ALJ's findings and RFC determination. The restrictions cited by Mr. Sturgill—limits on walking and keeping neck in a neutral position—seem perfectly compatible with performing light work, though it's clear they were meant to be precautionary restrictions for only the time immediately after his procedure (conducted in October 2016). The ALJ also thoroughly analyzed Dr. Young's medical treatment of Mr. Sturgill, citing evidence relating to that treatment almost a dozen times (R. 19-22 citing exhibits 2F and 4F). That included the October 2016 procedure *See Moore*, 743 F.3d at 1123 (ALJ didn't need to discuss every piece of evidence in the record). Again, the ALJ fully considered the entire record, including evidence Dr. Young's treatment of Mr. Sturgill.

Mr. Sturgill next requests the court to reevaluate the ALJ's credibility determination. The Commissioner is right that "[a]n ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). Mr. Sturgill wants the court to reconsider his statements that Dr. Young indicated he would need another surgery. The ALJ clearly found that "it does not appear there is any medical evidence of record to support the claimant's hearing testimony that Dr. Young recommended the claimant have another surgery" (R. 22). That required a credibility determination of his statements. The ALJ went on to support that determination. She described the medical evidence contradicting Mr. Sturgill's testimony. *See* R. 23 (citing last appointment with Dr. Young and no mention of surgery, September 2017 MRI showing stability, and October 2017 appointment with primary care provider and no complaint of pain in neck). Contrary

6

to Mr. Sturgill's argument, it is not "intuitive that of course that Sturgill likely needs another surgery," and the court won't speculate as to "precisely what Dr. Young *would have said*" to Mr. Sturgill. ECF 15 at 10 (emphasis added). What matters is that the ALJ weighed Mr. Sturgill's statements and considered them in light of the entire record.

Next, Mr. Sturgill claims the ALJ applied the wrong standard in analyzing Mr. Sturgill's symptom allegations. The ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (R. 20-21). Mr. Sturgill says this is the wrong standard—namely that his symptoms needed to be "entirely" consistent with the medical evidence.

The correct standard to apply is whether a claimant's allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a); *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871 (N.D. Ill. 2018). Courts have found the ALJ's boilerplate language problematic. *See id.*; *Bancolita v. Berryhill*, 312 F. Supp. 3d 737, 744 (N.D. Ill. 2018). But several courts have decided that the inclusion of such language by itself doesn't necessitate remand. *See Giboyeaux v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 14868, 11 (N.D. Ind. Jan. 9, 2020) (Collins, J.) (collecting cases); *see also Oliver v. Saul*, 2020 U.S. Dist. LEXIS 55894, 11 (N.D. Ind. Mar. 31, 2020) (Kolar, J.) ("This language is not necessarily fatal so long as the ALJ fully explains his decision and a 'commonsensical reading' of the entire decision suggests no error."). That is the case here.

First, Mr. Sturgill's argument is undeveloped; he doesn't cite to where in the ALJ's opinion the wrong standard was used other than the boilerplate language. He doesn't explain what symptom allegations the ALJ wrongly analyzed. The inclusion of the language cannot by itself be a basis for remand—the entire decision must be examined to see if the wrong standard was actually applied. Here, the ALJ fully explained that Mr. Sturgill's allegations are not just "not entirely consistent" with

the record, but in fact inconsistent with the record. In other words, the ALJ applied the right standard in application.

To illustrate, the ALJ stated "the medical records do not document the frequency, duration, or degree of limitation, due to headaches, as reported/testified to by the claimant" (R. 22). The ALJ explained that there are no records of Mr. Sturgill being treated in the emergency department for his headaches, "nor does it appear that he was given prescription medications such as Imitrex for his headaches" (R. 22). The ALJ also considered other evidence related to Mr. Sturgill's headaches, including a questionnaire and opinion evidence (R. 19, 23). As such, the ALJ's analysis of Mr. Sturgill's subjective complaints about his headaches are supported by substantial evidence.

The ALJ later stated, "it does not appear there is any medical evidence of record to support the claimant's hearing testimony that Dr. Young recommended the claimant have another surgery" (R. 22). Again, the ALJ found Mr. Sturgill's testimony inconsistent with the evidence; specifically, the ALJ cited to Mr. Sturgill's last visit with Dr. Young in January 2017 when Dr. Young reported he would "have a better idea as to how to proceed once the additional imaging is available" (R. 364). By citing the medical evidence to show why the ALJ discounted Mr. Sturgill's testimony, she applied the right standard. Furthermore, the ALJ correctly stated the standard earlier in her opinion: "In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p" (R. 19). Though the boilerplate language alone might be seen as problematic, the ALJ did not err in her application of the correct standard.

Last, Mr. Sturgill asserts that the ALJ's determination of his RFC is not supported by substantial evidence. He first points out an inconsistency in the ALJ's opinion. The ALJ first says that "[i]n April 2017, the claimant reported that from his shoulders to his neck and halfway down his back

he experienced numbness," along with pain after lifting anything (R. 22). Two paragraphs later the ALJ says Mr. Sturgill had two appointments, one in April and another in October 2017, where he did not complain of any neck pain or numbness or headaches (*id.*). He couldn't have both reported that he experienced pain and not reported any pain at the same time. But ultimately, this minor error is irrelevant in light of the entire record. *See Kolar v. Berryhill*, 695 F. Appx. 161, 162 (7th Cir. 2017) ("Almost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence. This is where the substantial-evidence standard of review matters.").

In finding that Mr. Sturgill can perform light work with his RFC, the ALJ fully explained the medical evidence supporting that decision. She examined the instances where Mr. Sturgill complained of pain, including treatment notes from 2015 in which he complained of headaches and neck pain and exhibited cervical tenderness and tightness (R. 21, 229-32). In August 2016, he complained of more pain but maintained full strength (R. 21, 235-36). He went to physical therapy and reported minimal changes and continued pain (R. 21, 290). He was treated by Dr. Young and continued experiencing pain. Dr. Young performed a second spinal fusion in October 2016, and Mr. Sturgill was discharged in good condition (R. 21, 261-63). On his follow-up, he had no major complaints and full strength (R. 21-22, 269). In January 2017, the x-ray of his cervical spine showed satisfactory appearance (R. 23, 273). A September 2017 MRI showed stability and nothing unremarkable (R. 23). The ALJ gave great weight to the State Agency medical consultants that determined Mr. Sturgill could perform light work. The ALJ considered Mr. Sturgill's subjective complaints and accordingly adjusted the RFC to accommodate those complaints: "the claimant testified that one of his headache triggers is heavy lifting, which is fully accommodated under the residual functional capacity defined at Finding 5" (R. 22). As such, the ALJ built a logical bridge from the evidence to his conclusion. *See Thomas*, 745 F.3d at 806.

CONCLUSION

The ALJ's decision is supported by substantial evidence. Accordingly, the court DENIES Mr. Sturgill's request for reversal or remand and AFFIRMS the ALJ's decision. This order terminates the case.

SO ORDERED.

October 23, 2020                                                  *s/ Damon R. Leichty*
                                                                  Judge, United States District Court